Bank of Benson v. Gordon.

LETTON, J., not sitting.

---

BANK OF BENSON, APPELLANT, v. W. A. GORDON ET AL., APPELLEES.

FILED MAY 3, 1919. No. 20918.

1. **Corporations: NOTES: INDORSEMENT.** It is within the apparent scope of the authority of an officer of a trading corporation to indorse a negotiable instrument, that is payable to the order of the corporation, only in furtherance of the business of such corporation.

2. ———: ———: ———: NOTICE. When a negotiable instrument is payable to the order of a corporation and is indorsed by a corporate officer in the corporate name and given as collateral security for a loan to himself individually, or to some other corporation in which he is interested, such facts are sufficient to put the lender on inquiry as to the actual authority of the corporate officer to make such transfer.

3. Appeal: DIRECTION OF VERDICT. Evidence examined and *held* sufficient to support the judgment of the district court.

APPEAL from the district court for Douglas county; LEE S. ESTELLE, JUDGE. *Affirmed.*

*D. L. Johnston*, for appellant.

*Byron G. Burbank* and *William Baird & Sons*, contra.

DEAN, J.

Plaintiff sued W. A. Gordon, as maker, and "Brodegaard Jewelry Stores, Incorporated," and Fred Brodegaard, as indorsers, to recover on a promissory note for $5,000 executed by Gordon on September 26, 1914, due in six months and payable to the order of "Brodegaard Jewelry Stores, Inc." When the taking of testimony was concluded the jury were directed to return a verdict in favor of all defendants. The suit was thereupon dismissed, and plaintiff appealed.

This is the second appearance here of this case. On the first appeal it was submitted to the commission, which found for plaintiff. Upon rehearing before the court we remanded the case for trial *de novo*. *Bank of Benson v. Gordon*, 102 Neb. 481.

Fred Brodegaard was president and general manager of two corporations that were separately engaged in the jewelry business at Omaha. The initial store was a corporation engaged in the retail trade and known as "Fred Brodegaard Jewelry Company." Subsequently a wholesale house, namely, "Brodegaard Jewelry Stores, Incorporated," was organized by Fred Brodegaard and others. The business of each corporation was entirely separate from the other. Brodegaard owned

and sold stock in "Stores Incorporated" to various persons, and, among others, 50 shares to Mr. Gordon at $100 a share, for which Gordon gave the note in suit. The note, instead of running to Brodegaard, the owner of the stock, was made payable "to the order of Brodegaard Jewelry Stores, Inc."

· A few days after the Gordon note was delivered to Brodegaard, namely, on October 3, 1914, he obtained a loan of $3,000 from the plaintiff bank, for which he gave a negotiable promissory note payable to its order and signed: "Fred Brodegaard Jewelry Co., by Fred Brodegaard, Pres. Fred Brodegaard." The cashier of the plaintiff bank testified in substance that Brodegaard, when he obtained the loan, delivered the note in suit to the bank as collateral security, and that in his presence Brodegaard indorsed on the back of the Gordon note the words: "Brodegaard Jewelry Stores, Inc., by Fred Brodegaard, Pres. Fred Brodegaard." The cashier also testified that at the request of Brodegaard he placed the $3,000 so borrowed to the credit of the "Fred Brodegaard Jewelry Company."

The record shows that Brodegaard deceived Gordon in that the stock so purchased was owned personally by Brodegaard, and was not the stock of the corporation as represented, and, as hereinbefore pointed out, the money obtained on the Gordon note did not go into the treasury of "Stores Incorporated," but by direction of Brodegaard was placed to the credit of another corporation in which he was interested. When Brodegaard obtained the note in suit, as stated in the former opinion, it was pleaded by Gordon that Brodegaard agreed "that the note was conditional; it being agreed in writing that he could return the stock and take up his note within a limited period." This agreement is in the record. It provides that Gordon was to have six months or a year, at his option, in which to return the stock and have his note and money returned to him with interest. When Brodegaard placed the note

in plaintiff's bank as collateral security and put it beyond his power to return it to Gordon, this of course was a violation of the agreement. As between the original parties to the note Gordon had a complete defense. It also appears that, under the law applicable to the facts, "Brodegaard Stores, Incorporated," is relieved from liability on the note in suit because the act of Brodegaard in the premises was without authority, unless it can be shown that plaintiff is a holder in due course.

In plaintiff's brief it is said that "there is but one issue in this case, namely: Is the plaintiff a holder in due course?"

From the facts before it at the time the loan was made, plaintiff was put upon inquiry respecting the authority of Brodegaard to use the Gordon note, payable to one corporation, as collateral security for a loan of money made to another corporation in which he was interested. It is within the apparent scope of the authority of a president and general manager of a trading corporation to indorse a negotiable instrument that is payable to the order of the corporation, only in furtherance of the business of such corporation. Where such instrument is indorsed by a corporate officer in the corporate name and given as collateral security for a loan to himself individually, or to some other corporation in which he is interested, as in the present case, this it seems is sufficient to put the lender on inquiry as to the actual authority of the corporate officer to make such transfer. 8 C. J. 521; *Mee v. Carlson,* 29 L. R. A. n. s., 351, and note (22 S. Dak. 365); *Kenyon Realty Co. v. National Deposit Bank,* 31 L. R. A. n. s., 169, and note (140 Ky. 133). A rule less stringent would jeopardize the interests of all corporate stockholders. We conclude that the bank had knowledge of such facts that, without further inquiry, its action in taking the instrument amounted to bad faith. Rev. St. 1913, sec. 5374.

Plaintiff places reliance upon the finding of the commission that there was apparently a course of dealing between the plaintiff bank and Brodegaard of which "Stores Incorporated" must have had knowledge, and that the corporation is therefore bound. This reliance is based in large part upon the fact that Brodegaard on three or four occasions discounted notes at the plaintiff bank that were payable to "Stores Incorporated," the proceeds of such notes being placed to the credit of "Fred Brodegaard Jewelry Company." But on this point it clearly appears that plaintiff never made inquiry of any person except Fred Brodegaard respecting his authority in the premises. The testimony at this trial shows that "Stores Incorporated" never knew of, nor at any time acquiesced in nor authorized, Brodegaard's course of dealing in the respects noted. Its officers were entirely unaware that he, as an officer of the corporation, was indorsing its name upon its notes as collateral security for loans that were not in furtherance of the business of the corporation. There is an entire lack of evidence that actual authority was ever given to Brodegaard to so indorse the notes of the "Stores Incorporated."

At the close of the testimony plaintiff and defendants Gordon and "Stores Incorporated" each moved separately for a directed verdict. Plaintiff's motion was overruled, and the motions of the defendants were sustained. It follows that the judgment of the district court has the same force and effect respecting controverted questions of fact that the verdict of a jury would have in a like case. *Modern Woodmen of America v. Berry,* 100 Neb. 820, Ann. Cas. 1918D, 302. The judgment should not be disturbed unless clearly wrong.

Finding no reversible error, the judgment is

AFFIRMED.

SEDGWICK, J., not sitting.